# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JORGE PEREZ-DIAZ,
        Petitioner,

v.                                          Case No. 8:22-cv-2386-KKM-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,
        Respondent.
_____

## **ORDER**

Perez-Diaz, a Florida prisoner, timely[1] filed a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition, (*id*.), the response in opposition, (Doc. 7), and Perez-Diaz's reply, (Doc. 10), the petition is denied. Because reasonable jurists would not disagree, a certificate of appealability also is not warranted.

_____

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* § 2244(d)(1). This one-year limitation period is tolled during the pendency of a properly filed state motion seeking collateral relief. *See* § 2244(d)(2). Perez-Diaz's conviction and sentence were affirmed on belated direct appeal on September 21, 2018. (Doc. 7-2, Ex. 15.) His judgment became final 90 days later, on December 20, 2018, upon expiration of the time to petition the Supreme Court of the United States for a writ of certiorari. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002). After 333 days of untolled time, Perez-Diaz filed his motion for postconviction relief on November 19, 2019. (Doc. 7-2, Ex. 33.) The motion remained pending until the state appellate court's mandate issued on September 12, 2022. (Doc. 7-2, Ex. 43.) Perez-Diaz filed his federal habeas petition 29 days later, on October 12, 2022. As a total of 362 days of untolled time elapsed, Perez-Diaz's petition is timely.

1

# I.    <u>BACKGROUND</u>

The State of Florida charged Perez-Diaz and three co-defendants with conspiracy to traffic in heroin. (Doc. 7-2, Ex. 2.) Perez-Diaz entered a negotiated guilty plea. (Doc. 7-2, Exs. 5, 6 & 7.) Under the negotiated terms, the State reduced the charge from conspiracy to traffic in 28 grams to 30 kilograms of heroin, which carried a 25-year mandatory minimum sentence, to conspiracy to traffic in 14 grams to 28 grams of heroin, which carried a 15-year mandatory minimum sentence. (Doc. 7-2, Ex. 6, pp. 6-7.) In accordance with the plea agreement, the state trial court sentenced Perez-Diaz to the minimum mandatory term of 15 years in prison.  (Doc. 7-2, Ex. 7.)

Perez-Diaz moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 7-2, Ex. 24.) The state trial court denied this motion, and the state appellate court per curiam affirmed the denial. (Doc. 7-2, Exs. 27 & 30.) While Perez-Diaz's postconviction appeal was pending, the state appellate court granted his motion for a belated direct appeal. (Doc. 7-2, Ex. 11.) The state appellate court per curiam affirmed the conviction and sentence. (Doc. 7-2, Ex. 15.)

After this affirmance, Perez-Diaz filed another postconviction motion under Rule 3.850. (Doc. 7-2, Ex. 33.) The state trial court dismissed the motion as second or successive, finding that Perez-Diaz failed to show good cause why he could not have raised the claims in his earlier postconviction motion. (Doc.

7-2, Ex. 38); *see* Fla. R. Crim. P. 3.850(h)(2) (stating that a court may dismiss a second or successive motion for postconviction relief if it fails to allege new or different grounds for relief or upon finding that the petitioner's failure to assert those grounds in an earlier motion was an abuse of process or was without good cause). The state appellate court per curiam affirmed the dismissal. (Doc. 7-2, Ex. 42.)

## II.    STANDARD OF REVIEW UNDER SECTION 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The power of the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction on a claim that his conviction was obtained in violation of the United States Constitution is strictly circumscribed." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir. 2022).

Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This section "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Id*. at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. at 413.

Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an

4

unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). But the habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Sec'y, Fla. Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2022). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 584 U.S. at 125.

The state may "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.* at 125-26.

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Brown v. Davenport*, 596 U.S. 118, 135 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but the petitioner's factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even where a petitioner succeeds in rebutting the presumption, he must show that the state court's decision is "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022). This is because a state court decision may still be reasonable "even if some of the state court's individual factual findings were erroneous— so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.*

(quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been

different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III.   <u>STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Perez-Diaz brings claims for ineffective assistance of trial counsel. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Because he entered a plea, to demonstrate prejudice, Perez-Diaz "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty" and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

IV.    <u>ANALYSIS</u>

### A. Ground One

Perez-Diaz argues that the state court erred in dismissing his second postconviction motion as an impermissible second or successive motion. He contends that it was properly filed because it was the first postconviction motion brought after his judgment became final on belated direct appeal.

Perez-Diaz's claim is not cognizable on federal habeas review. *See Carroll*, 574 F.3d at 1365 ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—*i.e.*, the conviction itself—and thus habeas relief is not an appropriate remedy."); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."). Accordingly, Ground One does not warrant federal habeas relief.

### B. Perez-Diaz's Remaining Claims

#### 1. Respondent's Procedural Default Argument

In Grounds Two through Six, Perez-Diaz alleges ineffective assistance of trial counsel. Perez-Diaz raised these claims in his second postconviction motion, which the state court dismissed as an impermissible second or successive motion under Rule 3.850(h)(2). Respondent contends that the state

10

court's application of this state procedural rule bars the claims from federal habeas review.

A state court's disposal of a petitioner's federal constitutional claim on state procedural grounds precludes federal review if the state procedural ruling rests on an "independent and adequate" state law ground. *Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1212 (11th Cir. 2009); *see also Kimbrough v. Sec'y, Fla. Dep't of Corr.*, 809 F. App'x 684, 691-92 (11th Cir. 2020); *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). "[T]he adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment" disposing of a federal claim. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

To be considered an "adequate" basis to bar a federal habeas court's review of the claim, "[a] state court rule must be correctly applied." *Scott v. Sec'y, Fla. Dep't of Corr.*, No. 23-11508, 2025 WL 708612, at *4 (11th Cir. 2025) (citing *Bailey v. Naigle*, 172 F.3d 1299, 1302 (11th Cir. 1999)). But "[w]hen a state . . . court applies a procedural bar that has no foundation in the record or state law, the federal courts need not honor that bar." *Scott*, 2025 WL 708612, at *4 (quoting *Walker v. Engle*, 703 F.2d 959, 966 (6th Cir. 1983)).

Perez-Diaz contends that his second postconviction motion, although filed second-in-time, was not an impermissible second or successive motion. He asserts that it was properly filed because it was the first postconviction

11

challenge brought after the belated direct appeal was decided. Perez-Diaz's argument finds support in Florida law. "It is a bedrock principle that 'the judgment of an appellate court, where it issues a mandate, is a final judgment in the cause.' " *State v. Okafor*, 306 So.3d 930, 933 (Fla. 2020) (quoting *O.P. Corp. v. Village of N. Palm Beach*, 302 So.2d 130, 131 (Fla. 1974)); *see also Marrero v. State*, 967 So.2d 934, 936 (Fla. 2d DCA 2007) ("A judgment and sentence become final for purposes of [Rule 3.850] 'when . . . direct review proceedings have concluded and jurisdiction to entertain a motion for post-conviction relief returns to the sentencing court.' " (quoting *Ward v. Dugger*, 508 So.2d 778, 779 (Fla. 1st DCA 1987))).

It is not apparent that the state procedural bar was correctly applied and therefore may serve as an adequate basis to default Perez-Diaz's federal claims in this § 2254 proceeding. Accordingly, the Court will review Perez-Diaz's claims.

### 2. Waiver of Remaining Grounds

Perez-Diaz waived Grounds Two, Three, Four, Five, and Six by entering his plea. Because a guilty plea waives non-jurisdictional defects, a petitioner who enters a plea can only challenge the plea's knowing and voluntary nature. The entry of a plea therefore precludes most challenges to the conviction. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (holding that, after a criminal defendant enters a guilty plea, he "may not thereafter raise independent claims

12

relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within" the range of competence for criminal attorneys); *see also United States v. Broce*, 488 U.S. 563, 569 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.").

Perez-Diaz alleges that trial counsel provided ineffective assistance before he entered his guilty plea. He does not clearly assert that these alleged instances of ineffective assistance of trial counsel rendered his plea involuntary. Accordingly, Perez-Diaz waived his remaining claims for relief.

Alternatively, Perez-Diaz fails to show entitlement to relief under the AEDPA. The state court also found that if the claims were considered on the merits, they would be denied. This decision is entitled to AEDPA deference. *See Crawford v. Head*, 311 F.3d 1288, 1324 (11th Cir. 2002) (discussing whether AEDPA deference applies and stating, "[g]iven that the state court rejected the claim both on the merits . . . and on the basis of a procedural

13

default . . . we must consider whether either of these grounds is reasonable and entitled to deference pursuant to § 2254(d)(1)"); *see also* Brian R. Means, *Federal Habeas Manual* § 3:19 (June 2025 update) (stating that, generally, "[a] state court merits adjudication is entitled to deference under § 2254(d) even if the state court alternatively held that the claim was procedurally defaulted" and collecting cases).

### 3. Ground Two

Perez-Diaz argues that trial counsel was ineffective for "failing to file a pre-plea motion to suppress" evidence. (Doc. 1, p. 14.) According to the factual basis given at the change of plea hearing, Perez-Diaz agreed with his co-defendants Mike Chavez Zazueta, Maribel Diaz-Ortiz, and Carlos Collazo, as well as informant Pedro Gonazlez, to arrange a drug transaction. (Doc. 17-2, Ex. 6, p. 16.) Chavez Zazueta would send approximately 50 grams of heroin to the home of Diaz-Ortiz and Collazo. (*Id.*) Perez-Diaz was to travel to that location and purchase the heroin. (*Id.*)

These individuals were heard and recorded on intercepted communications. (*Id.*) A package addressed to the home of Diaz-Ortiz and Collazo was intercepted by law enforcement and found to contain 46 grams of heroin. (*Id.*) In some recordings, Perez-Diaz, Gonzalez, and Chavez Zazueta discussed the price and quantity of the heroin that was later intercepted. (*Id.*, pp. 16-17.)

Perez-Diaz alleges that when counsel told him the State's evidence included recorded phone calls obtained through a wiretap and content from his seized cell phone, he told counsel that officers took his phone without a warrant when he was arrested. Perez-Diaz asserts that counsel said he would investigate filing a motion to suppress, but that counsel did not do so. Instead, Perez-Diaz alleges, counsel advised him to accept the State's plea offer, told him that the State was making the same offer to any of the co-defendants who would testify against him at a trial, and said that he was "not doing" a motion to suppress. (Doc. 1, p. 16.)

In arguing that a motion to suppress would have been successful, Perez-Diaz contends that "evidence discovered by counsel for his co-defendant(s)" revealed deficiencies in the government's application for a wiretap, as well as information that the State's informants, Pedro Gonzalez and Ebenezer Ramos Jimenez, were motivated to lie because they were "working off" charges by acting as informants. (*Id.*)

The state court found that Perez-Diaz failed to establish that counsel had a good-faith basis to file a motion to suppress and that if this claim was resolved on the merits, it would be denied because Perez-Diaz failed "to establish a manifest injustice requiring withdrawal of the plea." (Doc. 7-2, Ex. 38, p. 5.)

15

The state court's decision was reasonable. Perez-Diaz has not shown that counsel had a good-faith basis to argue that the officers' gathering of evidence was unlawful. Although he contends that officers did not have a warrant for his cell phone when they took it into evidence at the time of his arrest, he does not allege that officers searched the phone's contents without a warrant. *See, e.g.*, *Riley v. California*, 573 U.S. 373, 401 (2014) (holding that "a warrant is generally required before" searching information on a cell phone, "even when a cell phone is seized incident to arrest"). The arrest report that Perez-Diaz attached to his Rule 3.850 motion states that his cell phone was taken into custody as evidence and that the officer "would obtain a search warrant for Perez-Diaz on a later date." (Doc. 7-2, Ex. 34, doc. p. 272.) Thus, Perez-Diaz has not established that police unlawfully searched any data on his phone before the state court issued a warrant.

Further, Perez-Diaz does not show that the wiretap application contained deficiencies that justified the suppression of the recordings. Although he contends that the application contained false statements, as addressed in Ground Six, Perez-Diaz only speculates that officers knowingly included false statements in the application.

Nor does Perez-Diaz show a reasonable probability that the suppression of any of this evidence would have caused him to insist on proceeding to trial, as he must to show prejudice. Perez-Diaz's allegations suggest that multiple

16

witnesses could have testified against him. Additionally, for the reasons discussed in the analysis of Ground Four, he does not show that he had a viable entrapment defense. Finally, to the extent Perez-Diaz asserts that his co-defendants later negotiated lesser sentences, he does not allege with specificity that certain evidence was excluded in their cases or that if the same or similar evidence was excluded in his case, he would have insisted on proceeding to trial. Therefore, he does not show that he was prejudiced by counsel's representation.

Perez-Diaz has not shown that the state court's ruling involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Two.

### 4. Ground Three

Perez-Diaz contends that trial counsel was ineffective for failing to identify, investigate, and depose the State's informants, Pedro Gonzalez and Ebenezer Ramos Jimenez. Perez-Diaz states that the informants' testimony "was of great value" and was "critical in providing evidence to refute the charged offense" and to establish an entrapment defense. (Doc. 1, p. 20.) He asserts that the informants could have testified to his "duress defense theory" that Gonzalez would harm Perez-Diaz's mother if Perez-Diaz "did not assist in the alleged drug transaction." (*Id.*)

17

The state court found that Perez-Diaz's claim would be denied if considered on the merits because he failed "to explain what counsel could have learned from deposition or further investigation that was not already contained in the discovery materials he references." (Doc. 7-2, Ex. 38, p. 7.)

Perez-Diaz asserts that the state court's decision was unreasonable because his postconviction motion did identify what information counsel would have found: "the names of the missing witnesses; the nature of their missing testimony; how the Petitioner was prejudiced by this omission; and a statement that the [informants] were available to testify at the trial." (Doc. 1, p. 21.)

The state court did not unreasonably deny Perez-Diaz's claim. Although Perez-Diaz asserts that his postconviction motion identified what information would have been uncovered, as the state court found, he did not articulate how such information differed from information available to counsel through discovery. (Doc. 1, pp. 20-22; Doc. 7-2, Ex. 33, pp. 15-19; Doc. 7-2, Ex. 34, pp. 16-19.)

Further, as Perez-Diaz fails to present evidence of what these witnesses would have testified to, his claim is too speculative to warrant federal habeas relief. *See Shaw v. United States*, 729 F. App'x 757, 759 (11th Cir. 2018) ("[The Eleventh Circuit has] stated that complaints about uncalled witnesses are not favored, because the presentation of testimony involves trial strategy and 'allegations of what a witness would have testified are largely speculative.' "

(quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978))); *Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009) ("In a habeas petition alleging ineffective assistance of counsel, mere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof." (citing *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001))).

Perez-Diaz has not shown, under the stringent AEDPA standard, that the state court unreasonably applied *Strickland* or based its decision on an unreasonable factual determination. Ground Three does not entitle Perez-Diaz to relief.

### 5. Ground Four

Perez-Diaz argues that trial counsel was ineffective for failing to investigate an entrapment defense. Perez-Diaz alleges that the informants "were instructed to target, force, and 'set-up' Perez-Diaz to arrange the charged heroin offense at the direction of . . . law enforcement officials." (Doc. 1, p. 24.) Perez-Diaz asserts that "he never had any prior disposition to sell drugs in his life prior to the charged offense." (*Id.*)

The state court found that, if considered on the merits, this claim would be denied because Perez-Diaz did not "establish that he had a viable entrapment defense that counsel failed to substantiate." (Doc. 7-2, Ex. 38, p. 7.) Perez-Diaz has not shown that the state court's ruling was unreasonable.

To establish a subjective entrapment defense in Florida, a criminal defendant "has the burden to first prove by a preponderance of the evidence that a government agent induced him to commit the charged offense." *Rivera v. State*, 180 So.3d 1195, 1197 (Fla. 2d DCA 2015). The defendant must also "produce evidence of lack of predisposition to commit the crimes." *Id.*

To show inducement, a defendant must show government action such as "persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship," as opposed to showing that the government agent merely provided an opportunity to commit a crime. *Id.* (citing *State v. Henderson*, 955 So.2d 1193, 1195 (Fla. 4th DCA 2007) and *State v. Bennett*, 710 So.2d 661, 662 (Fla. 2d DCA 1998)); *see also State v. Harper*, 254 So.3d 479, 486 (Fla. 4th DCA 2018) (stating that "[i]nducement cannot be found by prompting or creating an opportunity"). An allegation of lack of predisposition may be supported by factors such as the absence of a criminal record. *See Rivera*, 180 So.3d at 1197; *see also State v. Lopez-Garcia*, 356 So.3d 857, 864 (Fla. 2d DCA 2022) (stating that the defendant "met his initial burden of establishing a lack of predisposition to commit the charged offenses by showing that he had never been investigated for or charged with such offenses in the past").

If the defendant makes a showing of lack of predisposition, the State can rebut the defendant's evidence. "The state may prove predisposition with

20

evidence of the defendant's prior criminal activities, his reputation for such activities, reasonable suspicion of his involvement in such activity, or his ready acquiescence in the commission of the crime." *Blanco v. State*, 218 So.3d 939, 944 (Fla. 3d DCA 2017) (quoting *Jones v. State*, 114 So.3d 1123, 1126 (Fla. 1st DCA 2013)).

The outcome of Perez-Diaz's claim depends on an analysis of entrapment as set out in state law. This Court must defer to the state court's finding that Perez-Diaz did not demonstrate a "viable entrapment defense" under Florida law. *See Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) (stating that even though ineffective assistance is a claim "of constitutional dimension," a federal habeas court "must defer to the state's construction of its own law when the validity of the claim that . . . counsel failed to raise turns on state law") (internal quotation marks and citation omitted).

Further, to the extent Perez-Diaz suggests that Gonzalez and Jimenez could have testified that he was coerced into participating, as in Ground Three, Perez-Diaz has not presented any evidence that they would have testified as he contends. *See Shaw*, 729 F. App'x at 759; *Streeter*, 335 F. at 864. And while he denies any history of selling drugs, Perez-Diaz has not shown a reasonable probability that the State would not have been able to prove predisposition with other evidence.

Perez-Diaz has not shown that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Four.

### 6. Ground Five

Perez-Diaz argues that counsel was ineffective for "failing to preserve the issue of 'disparate codefendant sentencing' as part of the plea agreement." (Doc. 1, p. 27.) Perez-Diaz states that he accepted counsel's advice to take the 15-year plea offer. He alleges that, even though counsel told him that the State was offering his co-defendants the same deal, several years later, they received 7-year sentences. Perez-Diaz argues that because he was the first of the co-defendants to resolve his case, counsel should have included a provision in the agreement regarding "disparate co-defendant sentencing."

The state court denied Perez-Diaz's claim. Perez-Diaz provided the state court with notes from the prosecutor's office, which he stated he obtained through a public records request. The state court found that these notes appeared to confirm that the State informed Perez-Diaz's counsel that it intended to make the same offer to Perez-Diaz's co-defendants. (Doc. 7-2, Ex. 38, p. 5.) The state court continued, "[t]he fact that the co-defendants may have rejected the State's initial plea offer and years later were able to negotiate better pleas does not contradict counsel's advice at the time of [Perez-Diaz's] plea." (*Id.*)

22

The state court's ruling was reasonable under the AEDPA standard. Perez-Diaz has not shown that the state court unreasonably determined that the prosecutor's notes were consistent with counsel's advice to Perez-Diaz. The state court also reasonably concluded that, even though his co-defendants ultimately received lesser sentences, Perez-Diaz's attorney was not ineffective at the time in advising Perez-Diaz to agree to the lowest permissible sentence for a reduced charge. *See Gavin v. Comm'r, Ala. Dep't of Corr.*, 40 F.4th 1247, 1263 (11th Cir. 2022) (noting that, under *Strickland*, a court deciding an ineffective assistance claim must consider counsel's performance in the light of the circumstances at the time of the alleged ineffective assistance).

Finally, it is not clear exactly what Perez-Diaz wanted counsel to "preserve." But he contends that the state court should have granted his postconviction motion and allowed him "to be resentenced to a similar sentence to that of his equally culpable co-defendants." (Doc. 1, pp. 28-29.) Perez-Diaz thus appears to suggest that counsel should have included in the plea agreement a provision allowing for his resentencing if his co-defendants received lesser sentences. But there is no indication that the State could agree to such a provision or would have been willing to do so. Perez-Diaz's speculative argument fails to establish counsel's ineffectiveness. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported

23

allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim).

Having failed to show that the state court unreasonably applied *Strickland* or based its decision on an unreasonable factual finding, Perez-Diaz is not entitled to relief on Ground Five.

### 7. Ground Six

Perez-Diaz asserts that trial counsel was ineffective for failing to move for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to prohibit the State from using the recorded phone conversations when officers knowingly made false statements on the application for a wiretap. Perez-Diaz asserts that the false statements came from the two informants, Gonzalez and Jimenez, who were motivated to lie in the hopes of receiving leniency in their criminal cases. Perez-Diaz also alleges that Gonzalez proffered testimony on February 17, 2015, but Perez-Diaz did not provide a copy of the transcript of this proffer to the state court. (Doc. 7-2, Ex. 38, p. 6 & n.2.)

Perez-Diaz contends that a reasonable attorney would have investigated the informants' agreement and "the contents of the subsequent discussions between the [informants] and [law enforcement] officials" to prove that Gonzalez's testimony supporting the wiretap application was "false, coerced, and orchestrated by police." (Doc. 1, p. 31.)

24

The state court denied Perez-Diaz's claim, finding that he offered "nothing more than his bare assertions that the affidavit in support of the wiretap was based on a false statement by police or that Gonzalez's February 17, 2015, testimony was coached." (Doc. 7-2, Ex. 38, p. 9.)

The state court's decision was reasonable. Under *Franks*, a trial court "must hold an evidentiary hearing where the defendant 'makes a substantial preliminary showing that [(1)] the affiant knowingly or intentionally or with reckless disregard for the truth included a false statement [or omitted material facts] in the affidavit and [(2)] that statement [or omitted fact] was necessary to the finding of probable cause.' " *Andrews v. State*, 390 So.3d 221, 233 (Fla. 2d DCA 2024) (quoting *Pilieci v. State*, 991 So.2d 883, 893 (Fla. 2d DCA 2008)).

As the state court found, Perez-Diaz's claim is based on his conclusory assertions that police knew the wiretap application included Gonzalez's untruthful testimony. This sort of speculative and uncorroborated allegation falls short of establishing that counsel had a good-faith basis to seek a *Franks* hearing. *See Tejada*, 941 F.2d at 1559. Because Perez-Diaz has not shown that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination, he is not entitled to relief on Ground Six.

## V.    CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Perez-Diaz must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Perez-Diaz has not made the requisite showing. Finally, because Perez-Diaz is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Perez-Diaz's Petition for Writ of Habeas Corpus, (Doc. 1), is **DENIED**. The **CLERK** is directed to enter judgment against Perez-Diaz and in Respondent's favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on December 29, 2025.

Kathryn Kimball Mizelle
United States District Judge